GERARDO CATENA, PLAINTIFF-RESPONDENT, v. RICHARD A. SEIDL, SUPERINTENDENT OF YOUTH RECEPTION AND CORRECTION CENTER, YARDVILLE, NEW JERSEY, DEFENDANT-APPELLANT.

Argued May 20, 1974—Decided June 25, 1974.

*Mr. Charles D. Sapienza* argued the cause for defendant-appellant (*Mr. Sapienza* and *Mr. Michael R. Siavage,* of counsel and on the brief).

*Mr. Robert L. Weinberg,* of the District of Columbia bar, argued the cause for plaintiff-respondent (*Mr. S. M. Chris Franzblau,* of counsel and on the brief; *Messrs. Franzblau Cohen & Falkin,* attorneys).

PER CURIAM. This appeal involves a review of the order of the trial court dated February 26, 1974 directing that plaintiff Gerardo Catena, who has been confined since March 4, 1970 for continuous contempt of the State Commission of Investigation (hereinafter S.C.I.), "be released from further confinement forthwith." The Appellate Division ordered a stay of the trial court's order pending the outcome of an appeal filed by the S.C.I. This Court granted direct certification of the matter, 65 *N. J.* 278 (1974), and continued the stay pending disposition on the merits of the controversy.

The S.C.I., created by *L.* 1968, *c.* 266, as its title indicates, is basically an investigatory body. Its purpose is to find facts

which may subsequently be used as the basis for legislative and executive action. *In re Zicarelli,* 55 *N. J.* 249, 258 (1970), aff'd 406 *U. S.* 472, 92 S. Ct. 1670, 32 *L. Ed.* 2d 234 (1972). The duties and powers vested in the S.C.I. by statute include "[t]he faithful execution and effective enforcement of the laws of the State, *with particular reference but not limited to organized crime and racketeering;"* (emphasis added). *N. J. S. A.* 52:9M-2(a). *N. J. S. A.* 52:9M-11 provides that "[b]y such means and to such extent as it shall deem appropriate, the commission shall keep the public informed *as to the operations of organized crime* * * *."* (emphasis added). In the course of any investigation or hearing the S.C.I. may confer immunity from criminal prosecution on a person appearing before it for his or her responsive answers and evidence, and thereby require such person to give relevant testimony or evidence which otherwise would expose such person to criminal prosecution or penalty. If a person refuses to give testimony or evidence after having been granted immunity, such person may be prosecuted for contempt. *N. J. S. A.* 52:9M-17.

It is clear from the foregoing that one of the primary functions of the S.C.I. is to investigate organized crime and racketeering and learn the method of operation and identity of those involved, to the end that the laws of this State may be enforced and, where necessary, appropriate legislative and executive action taken.

The power to grant immunity from criminal prosecution or penalty is one of the tools given the S.C.I. to enable it to function effectively. Ancillary thereto is the right to maintain civil contempt proceedings against a person who refuses to testify or produce evidence before the S.C.I. despite having been granted immunity.

In *In re Zicarelli, supra,* this Court, in upholding the legality and constitutionality of the foregoing statutory provisions, pointed out that the provisions for prosecuting a recalcitrant witness for contempt are not penal in nature —

that the object is to compel the person to provide the S.C.I. with the needed testimony or evidence — not to punish for silence. As we stated therein, 55 *N. J.* at 272, *supra,* "[t]he very provision for a grant of immunity repels the notion that a witness may choose to be silent for a price." Our decision in *Zicarelli* was affirmed by the United States Supreme Court which noted "[a]ppellant is of course free to purge himself of contempt by answering the Commission's questions." 406 *U. S.* at 481, 92 S. Ct. at 1676, 32 *L. Ed.* 2d 241, *supra.*

We turn to the case at hand. Gerardo Catena, a suspected member of the hierarchy of organized crime, appeared before the S.C.I. pursuant to subpoena, but refused to answer some 80 questions relating to organized crime activities propounded to him even though he was granted testimonial immunity pursuant to the statute. He was thereupon cited for contempt by the Superior Court which, on March 4, 1970 ordered that Catena be committed until such time as he purged himself of contempt by testifying as ordered.

Following his commitment, Catena has pursued numerous legal proceedings in the State and Federal courts seeking to effect his release, all of which ultimately proved unsuccessful. In the meantime, he has remained steadfast in his refusal to testify before the S.C.I.

The instant proceeding entitled Complaint (verified) in Lieu of Habeas Corpus, was filed on Catena's behalf in December 1973. When the matter came before the trial court in January 1974, oral argument was had on the legal issues involved and briefs were submitted. No testimony or other evidence was presented. However, subsequent to the hearing plaintiff's counsel submitted a medical report as to plaintiff's present health.

By letter opinion dated February 25, 1974 the trial court determined that the order holding plaintiff in contempt no longer had any coercive impact and had become punitive in nature and, therefore, the order must be vacated. The trial court based its determination on the length of plaintiff's con-

finement, the possibility of continued incarceration for the life of the S.C.I., which is presently extended to December 31, 1979,[1] plaintiff's age of 72 years, Catena's poor physical condition with continued deterioration, and his adamant refusal to purge himself of the contempt and to answer all or any of the questions put to him by the S.C.I. The trial court found no substantial likelihood that continued commitment would accomplish the purpose of the order upon which the commitment was based.

For the reasons hereinafter set forth, we reverse.

While it has been stated that the justification for coercive imprisonment, as applied to civil contempt, depends upon the *ability* of the contemnor to comply with the court's order, *Shillitani v. United States*, 384 *U. S.* 364, 371, 86 S. Ct. 1531, 1536, 16 *L. Ed.* 2d 622, 627 (1966), such statement must be understood in the context in which it was used. It is abhorrent to our concept of personal freedom that the process of civil contempt can be used to jail a person indefinitely, possibly for life, even though he or she refuses to comply with the court's order. Most commentators agree that in civil contempt proceedings involving an adamant contemnor, continued imprisonment may reach a point where it becomes more punitive than coercive and thereby defeats the purpose of the commitment. "Contempt: Civil Contempt Order May Not Include Absolute Sentence," 47 *Minn. L. Rev.* 907 (1963); "The Coercive Function of Civil Contempt," 33. *U. Chi. L. Rev.* 120 (1965); See also *Goldfarb, The Contempt Power* (1963), *Colum. Univ. Press.*

■ The legal justification for commitment for civil contempt is to secure compliance. Once it appears that the commitment has lost its coercive power, the legal justification for it ends and further confinement cannot be tolerated.

The problem is to articulate a fair test with appropriate criteria, particularly in a situation such as here where the

---

[1] See *L.* 1973, c. 238, § 1.

contemnor, though capable of purging himself of contempt, has resisted the coercive purpose of his commitment for some four years.

The trial court found that there was no substantial likelihood that continued commitment of Catena would accomplish the purpose of the order upon which the commitment was based. See *In re Farr,* 36 Cal. App. 3d 577, 111 *Cal. Rptr.* 649 (Ct. App. 1974). We find this test to be fair and reasonable. We differ with the trial court only in evaluating the relevant facts present in the record.

■ At oral argument before us, counsel for Catena conceded that for the purposes of this appeal his client was able to testify and had information relevant to the S.C.I.'s continuing investigation of organized crime. Admittedly, therefore, Catena is still in contempt of the S. C. I. and subject to the order committing him until he purges himself of contempt by testifying. In this situation the S.C.I. is not required to demonstrate the continued efficacy of such order. Rather, Catena has the burden of showing that the commitment, lawful when ordered, has lost its coercive impact and has become punitive.

■ No hard and fast rule can be formulated and no fixed period of time set. Certainly Catena's age and physical health are factors to be taken into account. So too the length of his confinement which now extends more than four years. However, during those four years Catena has almost continuously been engaged in numerous proceedings in the State and Federal courts seeking to invalidate his commitment. His refusal to testify during that period could well have been influenced by the hope or advice that it would not be necessary for him to break his silence because he had good legal grounds for securing his release.[2] Indeed, at one

---

[2] We do not intimate that Catena's rights should be prejudiced in any way by his having pursued available legal remedies. But where the inquiry involves his state of mind, past and present, we have the right to draw reasonable inferences based on available facts and circumstances.

point the Federal Court of Appeals ordered that Catena be set free. See *United States ex rel. Catena v. Elias,* 449 *F.* 2d 40 (3 Cir. 1971). This judgment was later reversed by the United States Supreme Court, *Elias v. Catena,* 406 *U. S.* 952, 92 S. Ct. 2056, 32 *L. Ed.* 2d 341 (1972). Now that he has failed to secure his release by these court proceedings, Catena may well reconsider his resolve to remain silent.

At the hearing below, counsel for the S.C.I. represented to the trial court that three persons who had been committed for contempt for refusing to answer questions in the S.C.I. investigation after having been granted immunity, had purged themselves of contempt after two years confinement.

 The argument is made that Catena's age, condition of health and his persistent silence for four years, without more, establish a *prima facie* case that his commitment has failed as a coercive measure. We cannot agree. As heretofore noted, Catena's past silence can be rationally attributed to considerations other than an adamant refusal to purge himself of contempt despite the consequences.

Applying the subjective test heretofore indicated, and considering all of the relevant factors appearing in the present record, our determination is that Catena has not demonstrated that the order of commitment no longer has any coercive impact and has become primarily punitive. Catena was and still is in contempt. If he is now to avoid the sanctions imposed, he has the burden of showing that there is no reasonable likelihood that continued incarceration will cause him to break his silence. He has not done so on the present record.

Plaintiff's remaining contentions require brief comment. He argues, (1) continued confinement under the circumstances of this case constitutes cruel and unusual punishment, (2) the contempt order is unconstitutionally vague, (3) he has a statutory defense under 18 *U. S. C.* § 2515 to a contempt resulting from illegal surveillance, (4) the contempt is constitutionally invalid because it stems from a subpoena prompted by illegal electronic surveillance, (5) a

portion of plaintiff's interrogation by the S.C.I. was without proper purpose, and (6) the changes in composition of the S.C.I. have invalidated the contempt.

The trial court rejected point 1, found points 2 and 5 to be completely without merit and point 6 to be frivolous. We are in full agreement with these rulings and affirm them.

As to points 3 and 4, plaintiff in his complaint herein alleged that if questions which he declined to answer were derived from unlawful electronic surveillance he has a federal statutory defense under 18 *U. S. C.* § 2515 to a resulting charge of contempt. He also believed and alleged that the subpoena to testify issued by the S.C.I. stemmed from illegally obtained information. As to this latter contention, see *In re Zicarelli, supra,* 55 *N. J.* at 274–275.

At the hearing below, plaintiff, while presenting no proof of unlawful electronic surveillance, asked for the opportunity to introduce evidence in support of these allegations should his other contentions be rejected. However, since the trial court found that plaintiff's confinement no longer had any coercive impact and must therefore be terminated, it found it unnecessary to receive this evidence or to rule on the legality of these contentions. We cannot consider such issues in the absence of a record. The matter must be remanded to the trial court to hold an evidentiary hearing as to plaintiff's contentions of unlawful electronic surveillance, the applicability of 18 *U. S. C.* § 2515 to plaintiff's situation and plaintiff's standing under 18 *U. S. C.* § 2518(10)(a) to invoke the statute if it is otherwise applicable.

The order of the trial court dated February 26, 1974 directing that Gerardo Catena be released from further confinement forthwith, is hereby vacated and the matter remanded to the trial court for further proceedings in accord with this opinion. We retain jurisdiction for the purpose of reviewing the ruling of the trial court on the matters covered by the remand.

*For vacation and remandment*—Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD—7.

*Opposed*—None.