In re Carlos Rosario **PANTOJAS.**

**Misc. No. 80–0010.**

United States District Court, D. Puerto Rico.

March 12, 1980.

Pedro J. Varela, Luis F. Abreu Elías, Hato Rey, P. R., Roberto José Maldonado, Río Piedras, P. R., Ellen P. Chapnick, San Juan, P. R., for plaintiff.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

This matter is now before us on movant's Motion to Revoke Order of Commitment, filed on September 24, 1978.

Movant herein, Carlos Rosario Pantojas, was summoned to appear before the Grand Jury on April 29, 1980, for a lineup. In view of his failure to comply with said request and to obey an order by this Court directing him to so comply, he was found to be in contempt under 28 U.S.C. § 1826[1] when, after a hearing on May 8, 1980, we determined that movant had not demonstrated "just cause" for his refusal to appear in the lineup. Section 1826 of Title 28, United States Code, provides as follows:

"(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury including extensions, before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

"(b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal."

The referred section codifies the power of the courts to enforce compliance of their lawful orders through civil contempt. *Danning v. Labine*, 572 F.2d 1386 (9 Cir., 1978). It had long been solved that a grand jury subpoena must command the same respect. *Levine v. U. S.*, 362 U.S. 610, 617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989 (1960). In accordance with said holding it had been established that where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance. *McCrone v. U. S.*, 307 U.S. 61, 59 S.Ct. 685, 83 L.Ed. 1108 (1939); *Giancana v. U. S.*, 352 F.2d 921 (7 Cir., 1965) cert. denied 382 U.S. 959, 86 S.Ct. 437, 15 L.Ed.2d 362 (1965).

28 U.S.C. § 1826 codified civil contempt practice with respect to recalcitrant witnesses in federal grand jury and court proceedings. See U.S. Code Congress and Ad-

---

[1]. In an appeal taken to the First Circuit the Court of Appeals affirmed this Court's decision. *In re; Carlos Rosario Pantojas,* 628 F.2d 701 (1st Cir. 1980).

ministrative News, 91st Congress Second Session (1970), at 4007, 4008.

In the case at hand the refusal to comply with the grand jury's request and to obey this Court's order cause the issuance of a commitment order. The movant presently remains in jail and now requests that the order of commitment be revoked upon the contention that there is no likelihood that the continued incarceration would achieve its purpose. Movant further alleges that he will not cooperate with the request inasmuch as he considers it to be an abuse of the grand jury process, and argues that his continued incarceration will have no coercive effect in convincing him to appear for the lineup.

This first argument is grounded on the nature of the contempt involved.

Certainly, Section 1826 is a coercive and not a punitive statute, *Re Archuleta*, 446 F.Supp. 68 (D.C.N.Y.,1978), since by its terms a recalcitrant witness may be confined until such time as the witness is willing to give such testimony.[2]

Movant avers that this being a civil contempt, as distinguished from the criminal contempt, the coercive purpose is not well served and the same has no purpose in view of his unwavering resolve to abide by his conscience even in the face of the orders of this Court. Therefore, we are called to determine whether movant's objections provide or constitute "good cause" to vacate the order of commitment issued by this Court.

Basing his argument in the civil nature of the contempt involved, movant relies in the cases of *Shillitani v. U. S.*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) and *Catena v. Seidl*, 65 N.J. 257, 321 A.2d 225 (1974).

We agree with movant's reliance on *Shillitani v. U. S., supra,* in the sense that the case presents a clear distinction between criminal and civil contempt. The case establishes that in contrast to criminal contempt, whose purpose is to punish acts which are contumacious and disrespectful of the court and thereby seeks to vindicate the authority of the court, the civil contempt on the other hand is coercive in nature.[3] Thus, it is not the fact of punishment, but rather its character and purpose that often serve to distinguish civil from criminal contempt.

The possibility of functional change of one concept into the other is observed in the case of *Catena v. Seidl, supra,* where the court had to ascertain whether a confinement ordered by the court ceased to be coercive and was transformed into punitive. In the referred case, Catena, a suspected member of the hierarchy of organized crime, refused to answer a series of some 80 questions before the State Commission of Investigation[4] related to organized crime activities propounded to him even though he was granted testimonial immunity pursuant to the statute. Catena remained silent for a period of four years. On February 25, 1974, the trial court determined that the order holding plaintiff in contempt no longer had any coercive impact and had become punitive in nature. The commitment order was vacated by the trial court, not without having given great weight to such factors as advanced age, poor physical condition and deterioration.

The case presents the possibility that a coercive confinement may loose its purpose becoming thereafter punitive. However, we cannot say that the case provides open support for movant's contentions, nor less can we say that claimant is entitled to an automatic revocation of the commitment order under the ratio of this case.

The decision is specific in stating that the burden of proving that confinement for contempt is punitive and not coercive is on

---

**2.** This is limited to the termination of the life of the grand jury.

**3.** The civil contempt of the type involved herein is designated to benefit a party that has complained to the Court as to the contemnor's recalcitrance.

**4.** This is an investigative body entrusted with the execution and effective enforcement of state laws with special concern but not limited to organized crime and racketeering.

the contemnor. Accordingly, there has to be an *adequate showing* to the Court for it to reach the conclusion that the confinement has in fact become punitive.

The trial court's order in the *Catena* case, *supra*, was appealed to the Supreme Court of the State. The Supreme Court of New Jersey failed to agree with the trial court's determination and ruled that the factors considered,[5] without more, did not establish a *prima facie* case that the commitment had failed as a coercive measure.[6] The Court found that the determination was much more complex. On this extreme it was stated: "... [appellant] has not demonstrated that the order of commitment no longer has any coercive impact and has become primarily punitive." And it was further stated: "Catena was and still is in contempt." *Catena, supra,* 321 A.2d at 229.

Thus, it is evident that there must be a strong and adequate showing to the effect that there is no reasonable likelihood that the continued incarceration will accomplish that for which the commitment order has been issued.

In the present case we fail to find an appropriate showing. Nor can we say that claimant's assertions satisfy the stringent burden, the adequate showing to the effect that the commitment has become punitive. Similar to the case at hand were the facts in the case of *In Re Grand Jury Investigation,* 600 F.2d 420 (3 Cir., 1979). In this case a man named Braun was held in civil contempt on September 29, 1978, for failure to give his testimony before the grand jury. For said failure the court made use of the provisions of 28 U.S.C. § 1826. On December 22, 1978, Braun moved the court to terminate the order of confinement for civil contempt. Like in the case at hand, Braun

alleged that inasmuch as there was no substantial likelihood that he would testify before the grand jury, his continued incarceration no longer bore a reasonable relationship to the purpose for which he was committed and therefore it violated due process. There, the district court[7] determined and the Court of Appeals affirmed, that the contemnor had failed to establish that his confinement violated due process, notwithstanding his persistent refusal to cooperate with the government in the past or his continued silence during the three months that he had been held in coercive imprisonment.

To hold that the petitioner has established his burden for the reasons adduced herein would not only be contrary to federal law, but would render the remedy encompassed in 28 U.S.C. § 1826 as a valueless tool, stripping it of its fundamental purpose.

We have previously stated that the legal justification for civil contempt is to secure compliance with an order.[8] The act of disobedience precisely consists in refusing to do what has been ordered. *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 419, 31 S.Ct. 492, 55 L.Ed. 797 (1911). In the present case such disobedience consisted in movant's refusal to appear for the lineup before the grand jury, for if petitioner would have chosen to obey the order, he would not have faced incarceration.

If it is not an entirely simple task to articulate a test to ascertain when has a confinement ceased to be coercive, less simple results the application of the test in determining whether the contempt is punitive rather than coercive. However, in this process we should first consider the con-

---

5. The opinion evinces that the court considered such factors as age, (72 years) poor health and physical deterioration.

6. There is no doubt, and it is not disputed herein, that an appropriate test to ascertain whether or not the contempt has become punitive would be to determine whether substantial likelihood exists to accomplish the purpose of the order upon which the commitment was based.

7. District Court for the Eastern District of Pennsylvania.

8. In this sense it is not the fact of punishment, but rather its character and purpose that often serve to distinguish civil from criminal contempt.

**348**

temnor's capacity to perform what has been ordered. As the Supreme Court held in the case of *Shillitani*, ". . . the justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the Court's order." At 384 U.S., page 371, at 86 S.Ct. page 1536.

█ Applying the long used description of a civil contempt, in the sense that a petitioner carries "the keys of the prison in his own pockets", *In Re Nevitt*, 117 F. 448, 461 (8 Cir., 1902), we cannot say that petitioner herein lacked the possibility of compliance. *In Re Visitor*, 400 F.Supp. 446 (D.C.S.D.,1975). The continued incarceration for civil contempt depends upon the ability of the contemnor to comply with the court's order. *Maggio v. Zeitz*, 333 U.S. 56, 76, 68 S.Ct. 401, 411, 92 L.Ed. 476 (1948). If such possibility exists, as in the present case, we cannot speak of abuse. Here, petitioner has not been asked for the impossible, and his bare assertions fail to satisfy the burden imposed upon him. He must establish that his incarceration is punitive, but no adequate showing has been made in the instant action.

█ We cannot overlook the fact that the purpose behind 28 U.S.C. § 1826 is to secure compliance through sanction and not to punish witness by imprisonment. However, we cannot anticipate whether or not further confinement will increase the likelihood that the contemnor will accede to the Court's demands. The possibility of compliance exists and to determine otherwise would be mere speculation. The idea behind the incarceration of the intransigent witness is that the desire for freedom, and accordingly, the willingness to comply with the order, increases during the time spent in prison. Therefore, contemnor's non–cooperation during the term for which he has been imprisoned cannot be found to be sufficient to satisfy the burden in establishing that the confinement has ceased to be coercive and that the metamorphosis transforming it in punitive contempt has taken place.

We must also consider that 28 U.S.C. § 1826 is a tool designed and directed to-

wards an effective administration of justice. That a grand jury in Puerto Rico is investigating a terrorist attack of a United States Navy bus in which two persons were killed, is also a relevant fact.

Plaintiff's refusal to cooperate for the reasons he has adduced cannot constitute a valid argument to vacate the commitment order under 28 U.S.C. § 1826. Such argument, if sustained, would only benefit those who persistently refuse to cooperate with the administration of justice, and for all practical effects, would emasculate the provisions of Section 1826, *U. S. v. Dien*, 598 F.2d 743 (2 Cir., 1979), stripping it of its fundamental purpose.

█ There is a legitimate interest in a grand jury having available to it matters under investigation, *Re Grand Jury Proceedings*, 605 F.2d 750 (5 Cir., 1979). This Court finds that the grand jury's investigative process may not be frustrated by mere assertions. As stated before, and for the reasons explained herein, we find no merit in the contemnor's argument to revoke the commitment order in view that he would not comply because he does not believe in the jury's investigative process. To contemnor's reiterated assertions that the federal wiretap protection has been abused, suffice it to say that the issue was solved by the Court of Appeals in the August 14, 1980, decision rendered on this matter. There, the First Circuit commented and ruled:

> "The Department of Justice Attorney conducting the Grand Jury investigation submitted an affidavit to the Court wherein he stated that, after search of the F.B.I. files and after discussion with relevant officials he knew of no interception of wire or oral communications by the F.B.I. in this case. He further affirmed that neither he nor the F.B.I. had been furnished the results of any such surveillance by other federal or local law enforcement officials. *Such an affidavit satisfies the government's duty to 'affirm or deny' the occurrence of electronic surveillance.*" (emphasis supplied)

Movant finally avers that his continued incarceration constitutes an open and direct violation of his rights under the Eighth and Fourteenth Amendments to the U. S. Constitution. He alleges that the prison facilities in which he has been forced to endure his incarceration have been declared unconstitutional by the undersigned Judge, who ordered the imprisonment of movant.

Concerning this angle of the case we must state that the order of the undersigned in Civil Case 79–4, *Carlos Morales Feliciano v. Carlos Romero Barceló,* does not cover the prison facilities at "Oso Blanco" where plaintiff is incarcerated, and accordingly, the undersigned did not declare as unconstitutional the prison facilities at said institution.

In view of the above we shall not pass to consider whether the instant motion is the proper avenue to challenge the conditions of confinement where plaintiff is presently incarcerated.

WHEREFORE, in view of the foregoing, the Motion to Revoke Order of Commitment, is hereby DENIED.

IT IS SO ORDERED.