717 P.2d 473

**JOHN DOE I and John Doe II, Petitioners,**

v.

**The SUPERIOR COURT of Arizona, In and For the COUNTY OF PIMA, and the Honorable Thomas J. Meehan, Judge Thereof, Respondents,**

**and**

**The STATE of Arizona, Real Party in Interest.**

No. 2 CA–SA 0317.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 18, 1985.

Reconsideration Denied Jan. 28, 1986.

Review Denied April 8, 1986.

Stephen D. Neely, Pima Co. Atty. by Alan Davidon, Tucson, for respondents.

Law Offices of William J. Risner by Kenneth K. Graham and Bertram Polis, Tucson, for petitioners.

## OPINION

LIVERMORE, Judge.

This special action was taken from the order of the superior court holding the petitioners in contempt for refusing to testify before the Pima County grand jury after having been granted use immunity pursuant to A.R.S. § 13–4064. The petitioners contend that Arizona's use immunity statute is unconstitutional because 1) the protection afforded by the statute is not coextensive with the provisions of the Fifth Amendment against compulsory self-incrimination, and 2) the statute permits incarceration for an indefinite period, and is therefore punitive in nature without affording the due process protections which would be available to petitioners in a prosecution for criminal contempt.

Briefly summarized, the facts are as follows. Petitioners were convicted and sentenced in a separate criminal matter on July 11, 1985. They were thereafter subpoenaed to testify before the grand jury, and although both appeared, they refused to answer questions, asserting their Fifth Amendment privilege against compulsory self-incrimination. At the state's request, petitioners were granted immunity and ordered to testify. When they again refused to answer questions on Fifth Amendment grounds, the state moved to hold them in contempt. Following a hearing, the trial court granted the motion and ordered the petitioners incarcerated until they purged themselves "by complying with the previous order of the court to answer the questions propounded by the Pima County Attorney or any member of the Pima County Grand Jury." The court further ordered that petitioners' prior sentences be stayed and no credits be given while petitioners were incarcerated under its contempt order. This order has been stayed pending the outcome of this special action.

The state concedes that a contempt order is not appealable, *State v. Mulligan*, 126 Ariz. 210, 613 P.2d 1266 (1980), but argues that special action relief is inappropriate and that the petitioners cannot demonstrate any legal prejudice which they have suffered as a result of the contempt order. In essence, the state's position is that appellate review should await the time when the state attempts to use petitioners' testimony or the fruits thereof against them. We disagree. If, as contended by petitioners, § 13–4064 is unconstitutional, then the trial court's order finding them in contempt and ordering them incarcerated is "without or in excess of jurisdiction or legal authority" and subject to review under Rule 3(b), Rules of Procedure for Special Actions, 17A A.R.S. Further, petitioners would then have suffered "legal prejudice" by having been incarcerated unlawfully and with no credit against the sentences previously imposed. For these reasons, special action is appropriate and we accept jurisdiction.

As noted above, petitioners' challenge to the constitutionality of § 13–4064 is twofold. The first contention is that the protections afforded by the statute in exchange for compulsory testimony are not coextensive with the Fifth Amendment and therefore do not remove the dangers the amendment was intended to protect against. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). An analysis of this argument requires a comparison of the statutes involved. In *Kastigar*, the Supreme Court was required to construe the provisions of the federal use immunity statute, 18 U.S.C. § 6002, which provides in part:

"the witness may not refuse to comply with the order [to testify] on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness *in any criminal case*, except a prosecution for perjury, giving a false statement, or oth-

erwise failing to comply with the order."
(Emphasis supplied.)

The *Kastigar* court held that the reach of this statute was coextensive with the Fifth Amendment, reasoning that "[t]his total prohibition on use provides a comprehensive safeguard, barring the use of compelled testimony as an 'investigatory lead,' and also barring the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures" and that the statute "affords the same protection [as the Fifth Amendment] by assuring that the compelled testimony can in no way lead to the infliction of criminal penalties." 406 U.S. at 461–462, 92 S.Ct. at 1664–1665.

The Arizona use immunity statute provides, in pertinent part:

"After complying [with the order to testify], such testimony or evidence, or any information directly or indirectly derived from such testimony or evidence, shall not be used against the person *in any proceeding or prosecution for a crime or offense concerning which he gave answer or produced evidence* under court order." A.R.S. § 13–4064 (emphasis supplied.)

Petitioners argue that this statute protects them against the use of their testimony or evidence derived therefrom only in proceedings or prosecutions for crimes or offenses concerning which they are compelled to testify, and that it does not prevent the state from using their testimony in proceedings or prosecutions involving different crimes or offenses. Accordingly, they contend, the statute violates the Fifth Amendment because its protection is not sufficiently broad.

■ Were this the only possible construction to be placed upon § 13–4064, we would be compelled to agree. However, the interpretation posited by the petitioners is not the only one possible, nor even the most logical one. Where more than one interpretation is possible, one of which would render the statute unconstitutional, this court is compelled to adopt the interpretation which renders the statute valid.

*Lake Havasu City v. Mohave County*, 138 Ariz. 552, 675 P.2d 1371 (App.1983). The emphasized portion of the statute is logically construed as affording protection coextensive with the Fifth Amendment by finding that the phrase "a crime or offense concerning which he gave answer or produced evidence" requires the exclusion in any prosecution of any evidence derived from any answer given in response to a grant of use immunity. So construed, the statute is constitutional.

■ Petitioners' second argument pertains to the allegedly indefinite nature of their incarceration under the statute, assuming that they persist in refusing to testify. Both sides agree that the purpose of civil contempt is to coerce compliance with the court's orders, and that incarceration for that purpose is valid only so long as the means exist for the contemnor to purge himself. *Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). In *Shillitani*, the Court held that a contemnor who had been incarcerated for refusing to testify before a federal grand jury must be released upon the final discharge of the grand jury, since there no longer existed the means by which the contemnor could purge himself. Unlike *Shillitani*, we are presented with a statute which specifically addresses the issue and provides a remedy: if the grand jury has been dissolved, the contemnor may testify before the court. A.R.S. § 13–4064. The fact that the statute does not set forth a maximum permissible period of incarceration does not render it punitive in nature and *per se* unconstitutional. Rather, the relevant inquiry must be whether the incarceration bears some reasonable relationship to its purpose of coercing compliance with lawful court orders, and must necessarily be decided on a case-by-case basis. Cf. *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) (due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed).

Several courts addressing this issue have concluded that, apart from any limitation on incarceration arising from the discharge of the grand jury or statutory limitations (see 28 U.S.C. § 1826), due process prohibits further incarceration for civil contempt where the contemnor has shown that there is no substantial likelihood that continued incarceration will accomplish its coercive purpose. See, e.g., *Simkin v. United States,* 715 F.2d 34 (2d Cir.1983); *In re Grand Jury Investigation,* 600 F.2d 420 (3d Cir.1979); *Lambert v. Montana,* 545 F.2d 87 (9th Cir.1976). To the same effect is *Catena v. Seidl,* 65 N.J. 257, 321 A.2d 225 (1974), reasoning that since the only legal justification for incarceration is to obtain compliance, once it is shown that compliance will not result, the legal justification for continued incarceration disappears.

*Catena* presents an interesting case in point. In *Catena,* a then-68-year-old man had been subpoenaed to testify before a state commission investigating organized crime, whose life had been extended by the legislature for ten years. When he refused to testify notwithstanding a grant of immunity, he was found in contempt and incarcerated. Four years later, following unsuccessful challenges to the validity of his original incarceration order, he sought release on the grounds of his age, poor health, and the unlikelihood that the order would have any coercive effect in light of his adamant refusal to testify. Although the New Jersey Supreme Court approved the trial court's adoption of the rule that a contemnor could not be continued in incarceration where it was shown that no substantial likelihood existed that it would accomplish the purpose of the commitment, it vacated the lower court's order releasing the contemnor. The court held that the burden was upon the contemnor to show that the commitment had lost its coercive impact and had become punitive. The court found that the burden had not been met, noting that the contemnor had spent the previous four years in numerous proceedings challenging the validity of his commitment. "His refusal to testify during that period could well have been influenced by the hope or advice that it would not be necessary for him to break his silence because he had good legal grounds for securing his release.... Now that he has failed to secure his release by these court proceedings, Catena may well reconsider his resolve to remain silent." 65 N.J. at 264, 321 A.2d at 228–229.

█ We need not reach on the facts of this case whether Arizona should adopt the rule that a loss of coercive impact renders incarceration for contempt unconstitutional. Just as in *Catena,* petitioners' refusal to testify may be based on their incorrect view that they were not constitutionally obligated to answer.

The trial court neither exceeded its jurisdiction nor abused its discretion in finding the petitioners in contempt and ordering their incarceration. Accordingly, we deny relief.

HATHAWAY, P.J., and LACAGNINA, J., concur.