576 A.2d 900

IN THE MATTER OF STATE GRAND JURY INVESTIGATION (RE ANTHONY ACCETURO).

ANTHONY ACCETURO, APPELLANT, v. DONALD ZELINSKI JR., RESPONDENT.

(MISTAKENLY CAPTIONED IN THE MATTER OF STATE GRAND JURY INVESTIGATION (RE ANTHONY ACCETURO)).

Superior Court of New Jersey
Appellate Division

Argued May 31, 1990—Decided June 27, 1990.

Before Judges KING, SHEBELL and KEEFE.

*Harold J. Ruvoldt Jr.* argued the cause for appellant Anthony Acceturo in both appeals (*Ruvoldt & Ruvoldt,* attorneys; *Harold J. Ruvoldt, Jr.* and *Richard A. Staggard,* on the briefs).

*Frank G. Iervolino,* Deputy Attorney General, argued the cause for respondent State of New Jersey in A–809–89T2 (*Robert J. Del Tufo,* Attorney General, attorney; *Frank G. Iervolino,* of counsel and on the brief).

*Ronald Bollheimer,* Deputy Attorney General, argued the cause for respondent Donald Zelinski Jr. in A–1157–89T5 (*Robert J. Del Tufo,* Attorney General, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel; *Donald S. Burak,* Deputy Attorney General, on the brief).

A statement in lieu of brief was filed on behalf of Donald Zelinski, Superintendent, Garden State Youth and Reception Center, N.J. Department of Corrections in A–809–89T2 by *Robert J. Del Tufo,* Attorney General, attorney (*Donald S. Burak,* Deputy Attorney General, on the statement).

The opinion of the court was delivered by

SHEBELL, J.A.D.

Appellant Anthony Acceturo appeals in the first captioned appeal from the denial by the Law Division of his motion for

"an evidentiary hearing to determine whether there was any substantial likelihood that his continued incarceration would be coercive or if his incarceration is purely punitive[,]" and in the second captioned appeal he asserts that he "should be released from protective custody as the superintendent [Garden State Reception and Youth Correctional Facility] did not comply with the provisions of *N.J.A.C.* 10A:5–5.1, *et seq.*, and that the agency decision was therefore arbitrary and capricious." We have consolidated these two appeals on our own motion for purposes of this opinion. We affirm on all issues.

## I.

On September 12, 1989, appellant Anthony Acceturo was ordered by Superior Court Assignment Judge Samuel D. Lenox Jr., sitting in Mercer County, "to testify before a duly constituted State Grand Jury pursuant to *N.J.S.A.* 2A:81–17.3." Appellant was given immunity as to any answers which he would have been privileged to withhold so that any information directly or indirectly derived from such testimony might not be used against appellant in any prosecution for a crime or offense related to the testimony or evidence obtained pursuant to the court's order.

Nonetheless, Acceturo refused to answer questions put to him before the State Grand Jury. At the request of Acceturo's attorney, a hearing scheduled for the following day, September 13, 1989, was adjourned. Appellant returned to his resident state of North Carolina after signing a waiver of extradition and being directed by the foreperson of the State Grand Jury to return on September 19, 1989. On the adjourned date, appellant returned to New Jersey and was once again taken before the State Grand Jury. He continued to refuse to answer questions and therefore was brought before Judge Lenox, where he was represented by counsel. Appellant was found in contempt and ordered to be taken into custody, and to "remain

in such custody until such time as he may purge himself of civil contempt by testifying before the State Grand Jury."

Although we have not been furnished with copies of the relevant moving documents, it appears that shortly thereafter appellant sought an evidentiary hearing on the following issues:

1. There is no bona fide investigation. Rather, the proceeding was a bad faith sham calculated to incarcerate Mr. Acceturo for purely punitive reasons.

2. Mr. Acceturo is not a witness as contemplated by law.

3. Mr. Acceturo's incarceration is part of an illegal scheme designed, conceived and implemented for an unlawful purpose, including but not limited to, creating the false impression in the criminal world that Mr. Acceturo is testifying, and by this false impression to create an artificial risk to the witness's life, and the lives of his family members.

4. Mr. Acceturo's continued incarceration is for punitive and not coercive purposes.

5. The incarceration of Mr. Acceturo has lost its coercive power. The legal justification for it does not exist and therefore, further confinement cannot be tolerated.

On October 3, 1989, in ruling on appellant's applications, the trial court observed:

I have no affidavits. I have no evidence whatsoever which has been made on personal knowledge and which is admissible into evidence and as to which an affiant, if there were an affiant, is competent to testify. This takes on particular significance because the Attorney General disagrees with many of the facts which have been asserted. There is no way that I can resolve disputed questions of fact on the basis of statements of counsel. So, I consider that I have nothing before me other than that which I had at the time that I entered my order of coercive incarceration. There is no way that I can render any intelligent ruling on the motions other than one based on basic principles of procedural law without a record. And I don't see how the Appellate Division can possibly entertain argument on appeal without a factual basis for a determination as to whether the Court has properly applied the law. So, I say preliminarily that I cannot act upon facts except those facts which were presented to me which motivated me to enter the order for coercive incarceration.

The judge then concluded in part:

However, I find that an incarcerated witness does not have the right to make bare allegations of impropriety on the part of the Grand Jury and law enforcement authorities and/or the Court and be entitled to have a hearing and subpoena witnesses and place the State in a defensive position to justify the incarceration order. If that were the law, an incarcerated witness could make a Roman Circus out of the proceedings under which he was incarcerated by

subpoenaing people from all areas of the law enforcement system and placing them under cross-examination.

Regarding the issue of the nature of the incarceration of appellant, the court stated:

My purpose is not punitive. My order provides that he may be released from incarceration, if he testifies. The law says that he is required to testify, so all he has to do is to comply with the order that he testify and he will be released. The purpose of my incarcerating him is to coerce him in to [sic] obeying the Court's order and obeying the law. I am attempting to persuade him to testify.... Mr. Acceturo has apparently taken a position that he never has in the past testified and that he never will in the future testify. I doubt if there has ever been a party who was incarcerated for failure to testify who has not taken the same position. If that and that alone were sufficient to avoid an order coercive in nature such as I have entered, no order would ever be enforceable. To suggest that because in the past he has refused to testify and that that is a basis for his not testifying at the present time would only mean that one who refused to testify previously would then be immune to orders that he do so at a future time. I don't think that at this time we have a situation where Mr. Acceturo can be said to have never testified in the past and will never testify again. I say he may never have testified in the past but maybe he will testify under the coercive order of the Court. And that we must wait and see what transpires.

The court further reasoned:

He's been incarcerated for only a short period of time. He's represented by counsel who since the day of his incarceration has been working to obtain his release. At this time he has every reason to hope that his counsel will obtain his release through ongoing judicial proceedings without the requirement that he testify to obtain that release. So, to the present time we had no basis whatsoever on which to conclude that the order which has been entered will not obtain from him that which is sought by the order.

We affirm the October 3, 1989, order of Judge Lenox denying Anthony Acceturo's request for an evidentiary hearing on the various issues raised, substantially for the reasons expressed by Judge Lenox in his oral opinion of that date. We find it necessary only to expand on that aspect of the order which denied an evidentiary hearing as to whether there was any substantial likelihood that Acceturo's continued incarceration would be coercive.

Judge Lenox found and certified on August 31, 1989, that appellant was a material witness under *N.J.S.A.* 2A:81–18 *et seq.* on the basis that "[t]here is presently an investigation

being conducted by a State Grand Jury sitting in the County of Mercer, State of New Jersey, into alleged criminal acts of conspiracy, theft by extortion, theft by deception and racketeering, ...." Based upon Judge Lenox's findings and certification, the Superior Court of North Carolina after affording appellant and his attorney a hearing and receiving evidence, found that appellant was a material and necessary witness for the State Grand Jury investigation in New Jersey and ordered that appellant be taken into custody and delivered to the appropriate officers of the State of New Jersey. Judge Lenox's coercive order of September 19, 1989, under which appellant is to remain in custody until such time as he may purge himself of civil contempt by testifying before the State Grand Jury, was in effect a matter of only days when appellant and his counsel began their attempts to convince Judge Lenox that appellant was entitled to immediate release or at least to an evidentiary hearing because of appellant's past history of refusing to testify and his asserted vow or dogma that "he would choose death over testifying."

■ It is well-established that "[t]he legal justification for commitment for civil contempt is to secure compliance. Once it appears that the commitment has lost its coercive power, the legal justification for it ends and further confinement cannot be tolerated." *Catena v. Seidl*, 65 *N.J.* 257, 262, 321 *A.*2d 225 (1974) (*Catena I*). The burden of showing that the commitment order lacks coercive impact and has become punitive is on the party committed. *Id.* at 263, 321 *A.*2d 225. While no hard and fast rule or fixed period of time has been set, the issue has been framed in terms of "whether there is a substantial likelihood that continued confinement will cause [the person confined] to change his [or her] mind and testify." *Catena v. Seidl*, 68 *N.J.* 224, 228, 343 *A.*2d 744 (1975) (*Catena III*); 65 *N.J.* at 263, 321 *A.*2d 225. The Supreme Court stated in *Catena III*:

However, we want to make it perfectly clear that in similar circumstances a person's insistence that he will never talk, or confinement for a particular

length of time does not automatically satisfy the requirement of showing "no substantial likelihood." Each case must be decided on an independent evaluation of all the particular facts. Age, state of health and length of confinement are all factors to be weighed, but the critical question is whether or not confinement will serve any coercive purpose. [68 *N.J.* at 229, 343 *A.*2d 744].

Catena, when granted his freedom by the Supreme Court, had been confined in excess of five years and was over 73 years of age and in ill health. 68 *N.J.* at 228, 343 *A.*2d 744.

It is clear that in the early stages of a coercive commitment, as observed by Judge Lenox, the party committed may well remain silent because of the hope or advice that it will not be necessary to testify because legal proceedings and appeals are continuing which might secure the party's release. What we must not lose sight of is the fact that the refusal of appellant to testify is wilful and contumacious. It is to counter such wilful conduct that courts have inherent power to incarcerate to enforce compliance with their lawful orders through civil contempt. *See Spallone v. United States,* 493 *U.S.* ——, ——, 110 *S.Ct.* 625, 631–32, 107 *L.Ed.*2d 644, 655 (1990); *Shillitani v. United States of America,* 384 *U.S.* 364, 370, 86 *S.Ct.* 1531, 1535, 16 *L.Ed.*2d 622, 627 (1966); *United States v. United Mine Workers,* 330 *U.S.* 258, 330–32, 67 *S.Ct.* 677, 713–15, 91 *L.Ed.* 884, 931–32 (1947). "[T]he civil contempt power would be completely eviscerated were a defiant witness able to secure his release merely by boldly asserting that he will never comply with the court's order." *In re Grand Jury Investigation (Braun),* 600 *F.*2d 420, 425 (3d Cir.1979).

The State correctly points out that "the issue before this Court is when does a contemnor's right to an evidentiary hearing accrue." This issue has not previously been considered by our State appellate courts. As we have previously noted, there are no hard and fast rules relating to the duration of coercive incarceration. *Catena I,* 65 *N.J.* at 263, 321 *A.*2d 225.

■ We have no doubt that as a matter of due process, the hearing should without question be provided no later than the expiration of 18 months of incarceration, as that is the maxi-

mum sentence which a court may impose for criminal contempt under *N.J.S.A.* 2C:29–9a and *N.J.S.A.* 2C:43–6a(4). *Cf. Morgan v. Foretich,* 564 *A.*2d 1, 6 (D.C.App.1989)[1] (due process concerns do not arise until 18 months of imprisonment have passed when 28 *U.S.C.* § 1826(a) is applicable); *see also Simkin v. United States,* 715 *F.*2d 34, 37 (2d Cir.1983); *In re Grand Jury Investigation (Braun),* 600 *F.*2d at 425, 428; *Matter of Federal Grand Jury Feb. 1987 Term (Griffin),* 677 *F.Supp.* 26, 27–28 (D.Me.1988). Even if constitutional concerns related to due process and cruel and unusual punishment are not grossly implicated, the underlying purpose of the commitment, namely, to coerce the party committed into testifying and thereby complying with the court order, requires that regardless of the duration of an individual's confinement, the court consider whether the confinement no longer bears a reasonable relationship to the purpose for which the party is committed. *See Catena III,* 68 *N.J.* at 229, 343 *A.*2d 744. We suspect that whenever such a state of affairs exists, it may be viewed as raising a substantial federal constitutional claim relating to denial of due process. *Morgan,* 564 *A.*2d at 6, citing and quoting *Lambert v. Montana,* 545 *F.*2d 87, 89 (9th Cir.1976).

We do not perceive, however, that a hearing is required on all applications for review of whether the order continues to have coercive impact. We envision that in appropriate circumstances the court may, without a hearing, grant a motion by the State for summary dismissal of the contemnor's

---

[1]The opinion and order of the District of Columbia Court of Appeals entered on August 21, 1989, was vacated by that court *en banc* on the same day. *See* 564 *A.*2d at 1, 20–21. The reason for this was the enactment of the District of Columbia Civil Contempt Imprisonment Limitation Act of 1989 (September 23, 1989). *See Pub.L.* No. 101–97, 103 *Stat.* 633 (1989). *See* 564 *A.*2d at 20–21. Notwithstanding the District of Columbia court's decision to vacate its opinion specifically on the basis of the passage of a law directed towards the defendant in that case, namely Doctor Morgan, we believe the principles articulated by the court are well-founded in the law. Therefore, we have cited to the court's original opinion where appropriate.

petition where the petition is clearly without merit. *Cf. R.* 3:22–9 (post-conviction relief—motion by prosecutor with ten-days notice for dismissal). Where, however, the court con-cludes that there may be sufficient merit to the contemnor's petition to warrant a hearing, it should be given a preference and determined promptly. Under no circumstances should the trial judge grant the contemnor's petition for release from custody without affording the State the opportunity at a hear-ing to test the veracity and credibility of the proofs offered in support of the petition, as the determination of subjective intent and purpose involves "factual issues [that] should be resolved only on the basis of live testimony with opportunity for cross-examination." *Catena v. Seidl,* 66 *N.J.* 32, 37, 327 *A.*2d 658 (1974) (*Catena II*), citing *State v. Sherry,* 46 *N.J.* 172, 175, 215 *A.*2d 536 (1965).

■ It is for the enforcing judge to determine, at the particu-lar time the issue is raised, whether the borderline between coercion and punishment has been reached. *See Soobzokov v. CBS Inc. Quadrangle/N.Y. Times Book Co.,* 642 *F.*2d 28, 31 (2d Cir.1981). This borderline is reached when in the opinion of the enforcing judge there no longer exists any substantial likelihood or realistic possibility that the court's order will have a coercive effect. *See Simkin v. United States,* 715 *F.*2d at 38; *Soobzokov,* 642 *F.*2d at 31; *see also Catena III,* 68 *N.J.* at 228, 343 *A.*2d 744.

We agree with the observation of the *Simkin* court:

Since a prediction is involved and since that prediction concerns such uncertain matters as the likely effect of continued confinement upon a particular individu-al, we think a district judge has virtually unreviewable discretion both as to the procedure he will use to reach his conclusion, and as to the merits of his conclusion. [715 *F.*2d at 38 (footnote omitted)].

The *Simkin* court noted that in 1983, just as today, there is "no decision of a court of appeals requiring a district court to take testimony from a contemnor on the issue of the utility of continued confinement or rejecting a district court's conclusion that such confinement is warranted." *Ibid.,* (footnote omitted);

*see, e.g., Matter of Federal Grand Jury Feb. 1987 Term (Griffin),* 677 *F.Supp.* at 27; *Sanchez v. United States,* 725 *F.*2d 29, 31 (2d Cir.1984); *see also Morgan,* 564 *A.*2d at 6. What is required is that the enforcing judge assess the likelihood of any coercive effect upon the particular contemnor—an individualized decision, considering all pertinent factors and without regard to any hard and fast time limitation. As observed by the court in *Simkin:*

> If a judge orders continued confinement without regard to its coercive effect upon the contemnor or as a warning to others who might be tempted to violate their testimonial obligations, he has converted the civil remedy into a criminal penalty. [715 *F.*2d at 38].

Where criminal penalties are deemed necessary, *N.J.S.A.* 2C:29–9a provides the course that must be undertaken so that a defendant may be afforded the constitutional rights attaching to a criminal prosecution.

## II.

Acceturo's second appeal seeks reversal of the decision of the Superintendent of Garden State Reception and Youth Correctional Facility which affirmed the decision of institution officials and a Corrections Department hearing officer to place appellant in "protective custody." Appellant maintains that the superintendent did not comply with the provisions of *N.J.A.C.* 10A:5–5.1 *et seq.* which require the superintendent to review a hearing officer's determination as to an individual's placement in protective custody based upon certain established criteria, including the reliability of the information acted upon and whether protective custody was justifiable considering the relative danger to the person confined. We find it unnecessary to determine this issue as it is clear that there is no factual or legal basis for Acceturo to complain regarding the circumstances of his confinement.

Appellant has urged in his appellate brief that the "desire to keep Acceturo in protective custody is designed to punish him for not testifying and is not utilized for the purposes of coerc-

ing his testimony." We note first that Acceturo refused to sign a written waiver of protective custody when afforded the opportunity at the state institution. He alleges nonetheless that his "protective custody" is part of a conspiracy by law enforcement officials to create the "false impression in the criminal world" that he is testifying, and to thereby create an artificial risk to his life and the lives of his family. He urges that this false impression is causing other inmates at the institution to abuse and harass him thereby punishing him for not testifying.

█ The State correctly notes in its brief that as a civilly committed prisoner[ ] [Acceturo] cannot be permitted to comingle with state-sentenced offenders in a state institution. *Cf. Jones v. Diamond*, 636 *F.*2d 1364, 1374 (5th Cir.) (en banc), *cert.* dismissed 453 *U.S.* 950, 102 *S.Ct.* 27, 69 *L.Ed.*2d 1033 (1981). ("confinement of pretrial detainees indiscriminately with convicted persons is unconstitutional ...").

It is therefore readily apparent that if Acceturo is to be held in a state institution, which he has not objected to, he must, of necessity, be held in the same type of custody as "protective custody." [2]

Contrary to Acceturo's assertions on appeal, we find that the medical records of the institution, which appellant has attached to the appendix of his brief on appeal, note that Acceturo himself complained that "he is being abused & teased & harassed by other I/Ms [inmates] who resents [*sic* ] him & *the privileges* he has...." (Emphasis supplied). Those same records also contradict his present position that he wants to be in the general population of the institution. A November 6, 1989, entry states "[w]ants to be placed somewhere else where

---

[2]The amended order of commitment provides for Acceturo to be held in the Mercer County Jail subject to a determination of placement by the Commissioner of Corrections pursuant to *N.J.S.A.* 30:4–85.1. However, the applicable section on transfer in the referenced statute only refers to "any inmate under sentence or charged with any criminal offense." The issue of whether confinement at state prison is appropriate has not been raised in this case, nor does it appear to have been raised in the various *Catena* appeals.

he can avoid interaction with other I/Ms." Further, the conditions Acceturo complains of are those normally incidental to confinement. There is no indication that his confinement was purposely designed to punish, rather these conditions are the normal coercive effects that are part of confinement for civil contempt.

We conclude that regardless of the procedures used to determine the level of security afforded to the appellant, he has failed to raise any substantial issue which would warrant consideration of an alternate form of confinement or treatment, regardless of whether that determination be made by an official at the confining institution or by the enforcing judge.

All issues in both appeals are affirmed.