**WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Plaintiff,**

v.

**HOLIDAY TOURS, INC., et al., Defendants.**

**Civ. A. No. 76–1500.**

United States District Court,
District of Columbia.

March 28, 1980.

Gregory P. Barth, Washington, D. C., for plaintiff.

H. Hugo Perez, Washington, D. C., for defendants.

## MEMORANDUM

AUBREY E. ROBINSON, Jr., District Judge.

This is an action for contempt of court and enforcement of an injunction pursuant to Rule 70 of the Federal Rules of Civil Procedure. The issue in this case is whether Defendants Holiday Tours, *et al.* (HT) violated the terms of this Court's injunction of March 15, 1977, as modified on July 5, 1978. That injunction stated in pertinent part:

> Defendants Holiday Tours, Inc., Holiday Gift Shops, and Holiday Travel Club, Inc., individually and severally, are permanently enjoined from operating a sightseeing business by motor vehicles with seating capacities of more than eight (8) passengers, rented or otherwise, without a certificate of public convenience and

necessity issued by the Washington Metropolitan Area Transportation Commission authorizing such operations, except as certificated coaches are chartered to accommodate occasional overbookings of Defendants' limousine tour service.

The Order also provided that

> Defendant Holiday Tours, Inc. deliver to Plaintiff Washington Metropolitan Area Transportation Commission the amount of Four Hundred Seventy-Six Dollars and Sixty Cents ($476.60), the fair cost of the 1976 shuttle service hearings.

This case has a long and troubled history. Plaintiff Washington Metropolitan Area Transportation Commission (WMATC) was created in 1961 to regulate transportation in the Metropolitan District pursuant to the Washington Metropolitan Area Transit Regulation Compact (Compact). 1 D.C. Code § 1401, *et seq.* Section 4(a) of the Compact prohibits any person from engaging "in transportation subject to this Act unless there is in force a certificate of public convenience and necessity issued by the Commission authorizing such person to engage in such transportation." It is undisputed that the certification requirement applies to transportation for sightseeing purposes, and that Defendant is not entitled to any of the exceptions to the Compact. *See Holiday Tours, Inc. v. Washington Metropolitan Area Transportation Commission,* 372 F.2d 401 (D.C. Cir. 1967). Since 1967 WMATC has attempted to enforce the Compact's provisions against Defendant HT,[1] and, while prevailing in Court,[2] its efforts in obtaining compliance have been largely unsuccessful.

It is uncontested that none of the Defendants have obtained a certificate of convenience and necessity from WMATC. It is also uncontested that the $476.60 has never

---

1. HT is a sightseeing business, owned and operated by Walter Lee Davis. Holiday Travel Club owns 2 Vista Cruisers and three functional buses. It is owned by Walter Davis' son, and its purpose is to provide vehicles for sightseeing operations conducted by Holiday Tours.

2. *See Holiday Tours, Inc. v. WMATC,* 352 F.2d 672 (D.C. Cir. 1965); *Holiday Tours, Inc. v.*

*WMATC, supra; WMATC v. Holiday Tours, Inc.,* Nos. 77–1379 and 77–1465 (D.C. Cir. May 24, 1978); *Holiday Tours, Inc. and Walter Lee Davis v. District of Columbia,* Nos. 4257, 4258, and 4259 (D.C. Ct.App. Oct. 18, 1967). For a history of the facts prior to this litigation, see *WMATC v. Holiday Tours, Inc.,* No. 76–1500 (D.D.C. March 15, 1977).

been paid by HT to WMATC. The only issues presented in this contempt proceeding are (1) has Defendant HT used vehicles capable of holding more than eight (8) passengers (coaches) for its sightseeing operations, (2) if so, were the coaches employed by HT certificated, and (3) were those certificated coaches used only to accommodate occasional overbookings.

It is clear from the manifests presented to this Court by Defendant HT that the use of coaches has pervaded the sightseeing operations. Manifests were presented covering four hundred and thirty-one (431) tours. Of these operations, the Vista Cruiser wagons (which accommodate less than nine (9) passengers) were used ninety-nine (99) times, coaches were used three hundred and twenty-nine (329) times, and a van which holds more than eight (8) passengers was used three times. Thus, over seventy-seven (77) percent of the tours were conducted in vehicles holding more than eight (8) passengers.

The manifests also indicate that Blue Lines carried HT passengers seventy-seven (77) times. Blue Lines is a certified carrier, and its buses are certified. On two hundred and forty-nine (249) occasions, Holiday Tours conducted business using buses provided by Holiday Travel Club, an uncertified carrier. Thus, fifty-eight (58) percent of the vehicles used by HT were uncertified coaches. It is abundantly clear from the manifests that HT has persistently used uncertified coaches to conduct sightseeing tours. While the testimony of Walter Davis indicates that the manifests might not be completely accurate, they are the best evidence of Holiday Tours' *modus operandi*. The Court rests its conclusions primarily on these manifests.

Finally, the manifests reveal that at no time did the use of Holiday Travel coaches result from occasional overbookings. Buses were employed in seventy-seven (77) percent of HT's sightseeing operations. In no way can this be considered an "occasional" use. Moreover, it is apparent from the arrangement between HT and Blue Lines that no overbookings within the meaning of the Order could possibly occur. This arrangement, outlined below, permits the Defendant to mingle its passengers with Blue Lines', and precludes the possibility of stranding sightseers due to overbooking. While the use of Blue Lines buses might be construed as resulting from overbooking, in no way can the use of Holiday Travel buses (amounting to fifty-eight (58) percent of Holiday Tours total operations) be so construed.

Holiday Tours claims that it is an agent of Blue Lines, Inc., and that as such it may operate pursuant to Blue Lines' certificate of convenience and necessity. To scrutinize the scope of this agency the Court must look at both the relationship between Blue Lines and Holiday Tours and the limitations imposed by law on this relationship.

The parameters of the Blue Line/Holiday Tours relationship are apparent from the contract between those parties. That contract provides that (1) HT will serve as ticket agent and organizer for Blue Lines, (2) HT must display Blue Lines' advertising material, (3) Blue Lines will lease five (5) buses from HT, and (4) HT shall carry public liability and property damage insurance on the buses leased to Blue Lines. The Court notes that Holiday Tours owns no buses; it therefore cannot lease buses to Blue Lines. The Court further notes that the contract only provides HT with the authority to act as ticket agent and organizer; it does not provide that Holiday Tours may operate sightseeing tours.

The contract is not dispositive of the relationship between HT and Blue Lines, however. The behavior of the parties may be analyzed to ascertain the extent Blue Lines delegated its authority. According to Walter Davis, both HT and Blue Lines compete for sightseers. Depending on the traffic volume in a given day, however, Blue Lines and HT might commingle passengers. The decision to commingle is made on a day-to-day basis, and either a Blue Lines or a Holiday Travel Club bus will be utilized. According to Davis, there is no present agreement for division of revenues or responsibilities. Generally, however, HT will

keep the revenue derived from ticket sales even if a Blue Lines bus is used; to compensate Blue Lines a Holiday Travel Club bus is made available to them when it is needed. This apparently causes little conflict for the bus drivers, who are hired on a daily basis (Davis refers to them as "independent contractors"). Often, the same driver will be employed by both Blue Lines and HT.

The evidence further establishes that HT operates outside the framework of Blue Lines' certificate of convenience and necessity. That certificate does not permit Blue Lines to originate sightseeing tours in Fairfax County. Oral evidence and uncontested affidavits presented by WMATC reveal, however, that HT has been originating sightseeing tours, conducted in coaches, from Fairfax County. While the evidence does disclose a working relationship between Blue Lines and Holiday Tours, the vast majority of that evidence indicates that HT is only an agent for sales and organization purposes. HT does not derive authority to conduct sightseeing tours from its relationship with Blue Lines.

Assuming *arguendo* that the Blue Line/HT relationship did provide that HT was delegated the authority to conduct sightseeing tours, this delegation would be unlawful. The Act, 1 D.C.Code § 1410, *et seq.*, provides for an extensive regulatory scheme to protect both the public and the carriers. A certificate of necessity and convenience is issued to facilitate the regulatory aspects of the Act. Permitting certificated carriers to delegate authority to uncertificated carriers would subvert WMATC's ability to regulate the industry pursuant to the Act, and is therefore unlawful.

The Court finds that Defendants have willfully and systematically violated this Court's injunction and Order of July 5, 1978. The Court can and does use its contempt power to prevent further violations. See *Shillitanti v. U. S.*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

An appropriate Order follows this Memorandum.

## ORDER

Upon consideration of Plaintiff's Motion for Contempt, Defendants' Opposition thereto, the Memorandum accompanying this Order, and the entire record herein, it is by the Court this 28th day of March, 1980,

ADJUDGED, that the Defendants HT, HTC, and HGS are in willful contempt of the Order of this Court of May 17, 1977, as amended by Order of July 5, 1978, and it is therefore,

ORDERED, that Walter Lee Davis, as President and sole shareholder of Holiday Tours, Inc., is sentenced to thirty (30) days imprisonment for failure to pay the costs of the 1976 shuttle service proceedings; and it is

FURTHER ORDERED, that Mr. Davis may purge himself of the above stated jail sentence by making payment of the costs of Four Hundred Seventy-Six Dollars ($476) with interest, from March 15, 1977, within ten (10) days, to Plaintiff Washington Metropolitan Area Transit Commission; and it is

FURTHER ORDERED, that Defendant Holiday Tours, Inc. is fined One Thousand Dollars ($1,000) to be paid to the Court within thirty (30) days of the issuance of this Order; and it is

FURTHER ORDERED, that Walter Lee Davis, as President and sole shareholder of Holiday Tours, Inc. and Holiday Gift Shops, Inc., and President of Holiday Travel Club, is sentenced to one (1) year imprisonment for the willful and flagrant contempt of this Court; and it is

FURTHER ORDERED, that Defendant Holiday Tours, Inc., is fined Ten Thousand Dollars ($10,000) payable within thirty (30) days of the date of this Order; and it is

FURTHER ORDERED, that Defendant Holiday Tours, Inc., and its President Walter Lee Davis, may purge themselves of the one (1) year prison sentence and the Ten Thousand Dollar ($10,000) fine imposed above, provided that

(1) All Defendants, Walter Lee Davis, and any corporation, partnership, or business venture that any of the Defendants, principals thereof, or Mr. Davis are or subsequently become involved in, shall divest themselves of all right, title and interest in any coaches, buses, or other vehicles with capacity for eight (8) or more passengers within thirty (30) days of the date of this Order, this divestiture to be made to a *bona fide* purchaser for value, and not to any Defendant, principal thereof, or Walter Lee Davis, or to any corporation, partnership, or business venture established by any of the Defendants, principals thereto, or Walter Lee Davis, for the conduct of a tour or sightseeing business; and

(2) As an alternative to the form of divestiture set forth above, Defendants shall surrender the coaches to the Federal Marshal Service for sale at a public auction, provided that none of the above mentioned persons or entities participates in any fashion in the purchase of said coaches; and

(3) None of the Defendants, principals thereto or Walter Lee Davis, or any corporation, partnership or business venture created by or participated in by any of the Defendants, principals thereof, or Mr. Davis shall buy or rent an ownership or leasehold interest in any vehicle with a capacity of more than eight (8) passengers for the purpose of conducting a tour or sightseeing business, except that the above stated persons may occasionally charter certificated coaches for tours and sightseeing consistent with this Court's July 5, 1978 Order.