Stile Software v. Mills            CV-98-327-SD  09/09/98
                    UNITED STATES DISTRICT COURT FOR THE

                          DISTRICT OF NEW HAMPSHIRE


Stile Software, Inc.

_____v.                                   Civil No. 98-327-SD

Charles A. Mills;
Firesign Computer Company;
Allen Systems Group, Inc.


                              O R D E R


     Following hearing, this matter is before the court on the

plaintiff's motion which claims that the defendant Allen Systems

Group, Inc. (ASG) should be held in contempt for violation of the

court's order of injunction.  For reasons that follow, the court

grants the motion.


1.  Background

     Plaintiff Stile Software, Inc. (Stile) entered into

agreements with the predecessors of ASG whereby Stile was granted

distribution rights in certain defined geographic territories for

the marketing of a computer software program known as

"Outbound".[1]  These agreements, dated, respectively, January 26,

_____

     [1]These predecessors were the codefendant Charles A. Mills
and the now-defunct "Firesign Computer Corporation".

1991 (Plaintiff's Exhibit 1) and April 18, 1994 (Plaintiff's Exhibit 2) also provided for mutual noncompetition between the parties (Plaintiff's Exhibit 1, ¶¶ 11.1, 11.2).

Typically, Stile's approach to a prospect who expressed interest in "Outbound" would include the forwarding of an information packet to the prospect, followed by a 60-day free trial of the product. If the prospect ultimately agreed to utilize the product, a license contract would be prepared and executed.

Although the time required to complete a transaction may vary from months to years, the license sale cycle is ordinarily consummated in six to eight months. An average license sale is in the fiscal range of $18,000 to $20,000.

The injunction order of this court issued on July 16, 1998. Document 9. It became effective with the filing of a bond on July 21, 1998. Document 12. Inter alia, the injunction order clearly bars ASG from contacting existing and potential clients of Stile within the territories assigned Stile for the 1991 and 1994 agreements. The injunction order further requires ASG to perform pursuant to the provisions of those agreements.

Stile's motion is grounded on two attempted contacts made by ASG with Stile's prospective customers. Document 14.

2

Defendant's objection, inter alia, rests on what it perceives to be a lack of clarity in the order of injunction.  Document 17.

2.  Discussion

The first of Stile's potential customers contacted by ASG were the single-owner companies known as Mnemotech/Data Statistics, Inc. (Mn/DS).  Stile's initial contact with Mn/DS took place in April 1998, and it was followed by the forwarding of an information packet and a free trial of the product.

In early July 1998, Stile's principal, Paul Boone, was vacationing in Colorado.  He heard from his office in New Hampshire that Mn/DS had reported that a representative of ASG had advised Mn/DS that Stile no longer represented "Outbound".  Boone telephoned Mn/DS from his vacation location to correct this erroneous information.[2]

Following issuance of the injunction, Boone wrote ASG concerning another such contact with another prospective customer and demanded that ASG cease and desist such contacts.  Plaintiff's Exhibit 4.[3]

_____

[2]The vacation contact occurred in a period of time prior to issuance of the injunction, and thus is not a ground for any finding of contempt.  It is related here, however, to complete the description of the background of the litigation.

[3]At the hearing on the contempt matter, ASG objected to admission of a number of the plaintiff's exhibits, and the court

3

Stile ultimately succeeded in selling an "Outbound" license to Mn/DS, but felt obliged to honor a $5,000 discount which ASG had previously given to Mn/DS.  Plaintiff's Exhibits 6, 7.  However, ASG has advised Stile that it does not honor such discounts made through its distributors.  Plaintiff's Exhibit 5.  Accordingly, Stile may have lost its commission of approximately $5,000 on the license sale to Mn/DS.

The second prospective customer of Stile contacted by ASG is the New York Division of Motor Vehicles (NYDVM).  Stile was initially in contact with Mark Hammond, the representative of NYDVM, in 1997.  Free trial of the "Outbound" product was arranged with NYDVM in April 1997, but Hammond was moved by his superiors to another project.  Accordingly, a second free trial was arranged in March 1998, but Hammond was again reassigned, and the trial was not completed.  Plaintiff's Exhibit 9.

On August 4, 1998, Hammond advised Boone that Terry Welte, a representative of ASG, had contacted him between July 24 and 28, 1998, to advise that ASG marketed download software solutions,[4]

_____

reserved ruling on such to the entry of this order.  Having reviewed them in context, the court finds relevant and admissible and accordingly strikes the identification from Plaintiff's Exhibits 3, 4, 6, 7, and 10.

[4]"Outbound" is in the category of "download software solutions," Plaintiff's Exhibit 3, and read by a nonexpert, it also appears that the product of ASG known as Xpath is also in that category.  Plaintiff's Exhibit 10.

4

and that if Hammond was interested he should contact ASG. Plaintiff's Exhibit 8. Terry Welte was the employee of ASG's predecessor, who dispatched the free trial materials to Mark Hammond in April 1997 and March 1998. Plaintiff's Exhibit 9.[5]

It is clear that "'courts have inherent power to enforce compliance with their lawful orders through civil contempt.'" Spallone v. United States, 493 U.S. 265, 276 (1990) (citing and quoting Shillitani v. United States, 384 U.S. 364, 370 (1966)). To prove entitlement to a civil contempt order, a plaintiff must establish (1) that a valid court order existed, (2) that the defendant had knowledge of that order, and (3) that the defendant defied the order. Roe v. Operation Rescue, 919 F.2d 857, 871 (3d Cir. 1990). The proof must establish by "clear and convincing evidence" that the defendant violated an order that is clear and unambiguous. Gilday v. Dubois, 124 F.3d 277, 282 (1st Cir. 1997); Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 16 (1st Cir. 1991).

All of the above requirements have here been met. As the court has pointed out above, the injunctive order clearly bars ASG from contacting existing and potential clients of Stile

_____

[5]Plaintiff's Exhibit 9 comprises the packing lists for the two free trials forwarded to Hammond. The initials "TW" appear on each sheet, and those initials were identified by Boone as the initials of Terry Welte.

5

within the territory assigned to Stile by their 1991 and 1994 agreements, and the order further requires ASG to perform pursuant to the provisions of those agreements. Document 9. Fairly read, this means that ASG may not compete with Stile in those territories concerning "Outbound" or any product similar in performance to "Outbound".

Concerning the attempts of ASG to sell to Mn/DS, the court finds by clear and convincing evidence that ASG attempted to compete in Stile's territory with Stile's efforts to sell an "Outbound" license to Mn/DS. Although Stile ultimately sold such license to Mn/DS, it was required, the court finds, to grant Mn/DS a $5,000 discount, which it probably will not be able to recoup from ASG. This competition the court finds to be in contempt of its injunctive order.

As regards NYDVM, the court finds by clear and convincing evidence that ASG tried to compete with Stile through the contact of its authorized representative Terry Welte, who knew that NYDVM was a prospective customer of Stile. The court finds that this attempt at competition is also in contempt of its order of injunction.

Turning to the remedy to be awarded, the court finds that ASG should pay to Stile the sum of $5,000 for each attempt at competition, or a total of $10,000. The court also finds that

6

Stile is entitled to an award of its reasonable attorney fees for the preparation and litigation of its contempt motion. Finally, the court finds that ASG should be and it is herewith ordered to turn over to Stile a list of all contacts which it had with any of the customers in Stile's territories following the effective date of the injunction.

## 3. Conclusion

The court has found ASG to have committed two acts of civil contempt in violation of the court's order of injunction. The court orders ASG to pay to Stile within ten days of the date of this order the sum of $5,000 for each such contempt, or a total of $10,000. The court orders Stile to file with the court within ten days of this order its motion for attorney fees, accompanied by its contemporaneous time sheet entries.[6] The court orders ASG within ten days of the date of this order to turn over to Stile its list of all customers contacted in the territories assigned

---

[6]ASG will have the regular amount of time provided by the applicable court rules to respond to the motion for attorney fees.

7

to Stile concerning such contacts made after the effective date of the injunction.

SO ORDERED.

Shane Devine, Senior Judge
United States District Court

September 9, 1998

cc:  Thomas J. Donovan, Esq.
     W. Wright Danenbarger, Esq.