Filed 8/5/16  Russell v. Superior Court CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| STEVEN E. RUSSELL, SR., et al. | C080911 |
| Petitioners, | (Super. Ct. No. 39-2013-00300469-CU-PO-STK) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | MODIFICATION OF OPINION |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| STATE OF CALIFORNIA et al., | |
| Real Parties in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on August 3, 2016, be modified as follows:

1

1.      On page 11, the last sentence of the Disposition paragraph should be deleted and replaced with a sentence reading:  "The parties shall bear their own costs. (Cal. Rules of Court, rule 8.493(a)(1)(B).)"  The paragraph shall now read:

The petition for writ of mandate is denied.  The parties shall bear their own costs. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

This modification does not change the judgment.


FOR THE COURT:


_____/s/_____
Nicholson, Acting P. J.


_____/s/_____
Butz, J.


_____/s/_____
Duarte, J.

Filed 8/3/16  Russell v. Superior Court CA3 (unmodified version)

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| STEVEN E. RUSSELL, SR., et al. | C080911 |
| Petitioners, | (Super. Ct. No. 39-2013-00300469-CU-PO-STK) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| STATE OF CALIFORNIA et al., | |
| Real Parties in Interest. | |

Petitioners Steven E. Russell, Sr., and Sandra Reece petition this court for a writ of mandate ordering the superior court to issue an order compelling the California Department of Corrections and Rehabilitation (CDCR) to extract material witness and inmate, Jerome Sidney DeAvila, from his cell so petitioners can depose him.  The trial

1

court denied petitioners' request for such an order, finding there was no authority for it and that the risks of injury and disruption weighed against the order. Although we do not condone CDCR's refusal to make DeAvila available for deposition by whatever means legally available to it, we conclude the trial court had discretion to decline to order extraction, and accordingly deny the writ.

## BACKGROUND

In 2013, DeAvila raped and murdered his grandmother Racheal Russell. The following year, he was convicted of these crimes and sentenced to 25 years to life in prison. Petitioners are the son and daughter of Racheal Russell, the victim; and petitioner Sandra Reece is also DeAvila's mother. After the murder, petitioners brought a wrongful death lawsuit against the State of California, the CDCR, and the County of San Joaquin, alleging negligence in the failure to warn of DeAvila's release from state custody before the murder and the failure to affix an ankle bracelet GPS monitoring device before his release.

The first amended complaint alleged that DeAvila had a lengthy criminal history of sex crimes, drugs, and violence, and was on parole at the time of the murder. One requirement of his parole was that he wear a GPS tracking device around his ankle. Due to a sex crime conviction, DeAvila was not allowed to go near a school; his grandmother's house was near a school. The year before the murder, the police arrested DeAvila 16 times for violations of parole or other criminal activity; each time they released him.

The complaint alleged that both the state parole officers and the county jail personnel knew, or should have known, that DeAvila often went to his grandmother's house. They also knew DeAvila had threatened his grandmother. Three days before the murder, the police arrested DeAvila for violation of parole. He was under the influence of drugs or alcohol and had removed his GPS device. County officials again released

2

DeAvila, without notifying his grandmother or reaffixing the GPS device; state parole officials concurred in the decision.

Petitioners gave notice that they would take DeAvila's deposition, first scheduled for January 8, 2015, then for March 2, at the California Health Care Facility in Stockton where he was housed. On March 2, arrangements were made to take DeAvila's deposition in a meeting room to accommodate the court reporter, but DeAvila refused to participate. He refused to come out of his cell. DeAvila had previously told prison officials he would not permit a videotaped deposition.

Petitioners believed DeAvila was an "important witness" and "necessary and material" to their case. They wanted to question him about what he had told parole and County officials about his relationship with his grandmother and his feelings and anger towards her. Pursuant to Penal Code section 2623, they obtained a court order requiring DeAvila to participate in the deposition and answer all questions.[1] Again, De Avila refused to come out of his cell. CDCR declined to forcibly extract him.

Petitioners moved to compel CDCR to forcibly extract DeAvila from his cell at the California Health Care Facility. The motion was supported by the declaration of Gerry Garcia. Garcia had worked at the California Youth Authority for over 25 years, retiring as Captain, Chief of Security. He understood DeAvila had a history of refusing to come out of his cell and Garcia believed that he had probably been extracted many times. In Garcia's experience, 70 percent of the time, an inmate will voluntarily come out of the cell when faced with forcible extraction. He saw no reason why DeAvila could

_____

[1] Penal Code section 2623 provides in part: "If in a civil action or special proceeding a witness be a prisoner, confined in a state prison within this state, an order for the prisoner's examination in the prison by deposition may be made." This procedure is in lieu of the usual deposition subpoena to a non-party witness. (See Code Civ. Proc., §§ 2020.210, 2020.310.)

not be extracted from his cell. Garcia stated, "Inmates are extracted all the time for different reasons."

The Warden of Mule Creek State Prison, where DeAvila was then housed, opposed the motion, contending there was no authority for compelling an extraction. The warden argued, among other things, that DeAvila was no longer at the California Health Care Facility; he was in the general population at Mule Creek State Prison, with minimal restrictions on his movement. This placement made a cell extraction more problematic. Further, there was no guarantee that DeAvila would answer deposition questions after the extraction, and any use of force or chemical agents would likely make him less cooperative.

The opposition was supported by the declaration of R. Roy, a facility captain at Mule Creek State Prison. Roy detailed the procedure for the involuntary removal of an inmate from his cell. Absent an imminent threat to the inmate or staff, any cell extraction would be "controlled" and would require extensive tactical planning, a large amount of equipment, and a large number of staff. Before the extraction, staff would assess DeAvila's mental health, medical history, and disciplinary history. A controlled extraction is time consuming and could take all day. First, there would be a cool down period to permit the inmate to comply with the order. This period includes clinical intervention by a licensed mental health practitioner and may include dialogue with religious leaders, correctional counselors, or other staff who have developed a rapport with DeAvila. Because DeAvila was in the general population rather than a segregated unit, the cell extraction would be more difficult. Because he was receiving mental health services, certain tools such as chemical agents may be prohibited. The actual confrontation could result in harm to DeAvila or staff. A cell extraction disrupts the prison environment and may lead to other violence.

The trial court denied the motion to compel a cell extraction. It found no authority for such an order and found that balancing the risk of injury and disruption weighed against ordering extraction.

Petitioners petitioned this court for a writ of mandate directing the trial court to vacate its order and to enter a new order granting the motion to compel the cell extraction. We issued an order to show cause.

## DISCUSSION

### I

*Writ of Mandate and Standard of Review*

"A writ of mandate will lie to 'compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station' (Code Civ. Proc., § 1085) 'upon the verified petition of the party beneficially interested,' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.) The writ will issue against a county, city or other public body or against a public officer. [Citations.] However, the writ will not lie to control discretion conferred upon a public officer or agency. [Citations.] Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent [citations]; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty [citations]." (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 490-491.)

Ordinarily, writ review of discovery orders is disfavored and the aggrieved party must raise the issue on direct appeal from a final judgment. (*Sav-On Drugs, Inc. v. Superior Court* (1975) 15 Cal.3d 1, 5.) "As a result, writ review of discovery rulings are limited to situations where (1) the issues presented are of first impression and of general importance to the trial courts and to the profession [citation], (2) the order denying discovery prevents a party from having a fair opportunity to litigate his or her case

5

[citations], or (3) the ruling compelling discovery would violate a privilege [citations]." (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1061 (*Johnson*).)

Here, we review whether the trial court *must* compel prison authorities to forcibly extract DeAvila from his cell to attend a deposition in a civil case to which he is not a party. We issued an order to show cause and proceed to analyze whether CDCR's refusal to forcibly remove DeAvila from his cell for deposition, and the trial court's subsequent refusal to order CDCR to do so, constituted a violation of the trial court's clear duty to enter the order. We conclude the trial court does not have a clear duty to make the order at issue here.

We recognize that CDCR is declining to forcibly produce a witness, over which it alone has physical control, for deposition in a case in which CDCR is the defendant. Further, CDCR stands accused of misconduct in its failure to monitor defendant, and to take any steps to prevent him from doing harm to his grandmother and to warn her that he posed a threat. Despite these compelling facts and circumstances, and CDCR's apparent conflict of interest as it plays the dual roles of defendant's custodian as well as the entity about whose conduct the plaintiffs seek information, the issue presented--compelling defendant's custodian to force him to attend a deposition which he has refused to attend-- boils down to a civil discovery issue.

"Management of discovery lies within the sound discretion of the trial court. Consequently, appellate review of discovery rulings is governed by the abuse of discretion standard. [Citation.] Where there is a basis for the trial court's ruling and the evidence supports it, a reviewing court will not substitute its opinion for that of the trial court. [Citation.] The trial court's determination will be set aside only when it has been demonstrated that there was ' "no legal justification" ' for the order granting or denying the discovery in question. [Citations.]" (*Johnson, supra,* 80 Cal.App.4th at p. 1061.)

6

## II

*No Abuse of Discretion in Denying Plaintiffs' Motion*

Petitioners contend the trial court abused its discretion in denying their motion to compel the cell extraction of DeAvila and force him to attend the deposition. Because a trial court has broad discretion in discovery matters, the issue before us is whether on these facts the trial court was *required* to order DeAvila's extraction.

Under CDCR policy, controlled force may be used "to gain compliance with a lawful order." (Cal. Code Regs., tit. 15, § 3268(a)(4).) Thus, the regulations permit a cell extraction for purposes of gaining compliance with a court order. These regulations, however, do not address *who may order* that use of force.

Petitioners contend the trial judge could order extraction under Penal Code section 2623 and Code of Civil Procedure section 128. As noted, the trial court had previously issued the order for DeAvila to participate in the deposition pursuant to Penal Code section 2623. That section, however, does not provide that the court may also order that the inmate witness be extracted from his cell and brought to the deposition against his will.

A trial court may hold a noncompliant witness in contempt for failing to attend a deposition. (Code Civ. Proc., § 2020.240.) The remedy is the same for noncompliance with a grand jury subpoena. "There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt. [Citations.] And it is essential that courts be able to compel the appearance and testimony of witnesses. [Citation.] A grand jury subpoena must command the same respect. [Citation.] Where contempt consists of a refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance. [Citations.]" (*Shillitani v. United States* (1966) 384 U.S. 364, 370-371 [16 L.Ed.2d 622].) While contempt may include conditional confinement, we are aware of no authority--and petitioners provide

7

none-- that permits a court to order the recalcitrant witness be forcibly brought to the place of the deposition (instead of to jail to serve time for contempt).

Petitioners contend the extraordinary remedy of compelled cell extraction is necessary in this case because the usual remedy of contempt is ineffectual. The trial court acknowledged the uselessness of contempt in this case, stating at the hearing that it does no good to hold in contempt a prisoner serving a 25-year-to-life sentence.

Code of Civil Procedure section 128, subdivision (a)(4) provides that every court shall have the power to "compel obedience to its judgments, orders, and process." "This statute has codified the principle of '[t]he inherent power of the trial court to exercise reasonable control over litigation before it, as well as the inherent and equitable power to achieve justice and prevent misuse of processes lawfully issued . . . .' [Citation.]" (*Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1021.) The court may exercise this power by punishing the failure to appear and participate in a deposition as a contempt. (*Lund v. Superior Court* (1964) 61 Cal.2d 698, 714; Code Civ. Proc., §§ 2023.010, subd. (d), 2023.030, subd. (e).) In such circumstances, "the court has no power to proceed in any manner other than as in a contempt." (*Lund,* at p. 713.)

But assuming Code of Civil Procedure section 128, or the court's inherent authority to administer judicial proceedings (see *People v. Engram* (2010) 50 Cal.4th 1131, 1146), can be construed as granting the court the authority to order prison officials to extract DeAvila from his cell to attend the deposition, the question here is whether the trial court abused its discretion by *not* making that order. We conclude the answer is no.

Petitioners contend the order of extraction is necessary to protect their due process rights in the civil action. We recognize that due process rights are implicated. "One of the elements of a fair trial is the right to offer relevant and competent evidence on a material issue." (3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 3, p. 29.) That due process is implicated, however, does not alone grant a trial court open-ended authority to order prison officials to move inmates about. For example, a court cannot

8

compel the transfer of an inmate to a civil courtroom.  (See *Payne v. Superior Court* (1976) 17 Cal.3d 908, 924 [court "may attempt, through the Department of Corrections, to arrange the presence of the prisoner.  Except in a few specified circumstances, a court has no statutory authority to command the Department of Corrections to transport a prisoner to a civil courtroom"]; *Swarthout v. Superior Court* (2012) 208 Cal.App.4th 701, 706-707 ["our Supreme Court is of the opinion that trial courts lack the power to transfer inmates outside of the situations specifically provided for by statute"]; Pen. Code, § 2621 [permitting removal of prisoner to court for criminal actions].)

Further, here the *trial court's actions* are not impeding petitioners' due process rights.  It is DeAvila who is refusing to be deposed, and the CDCR is declining to forcibly remove him from his cell to go to the location established for the deposition.  The *court* is not denying petitioners the right to depose DeAvila or to present his testimony at trial.  Instead, the trial court has already issued an order compelling DeAvila to attend and answer questions at a deposition.  The record shows he refused to come out of his cell because he did not want to participate in the deposition; earlier, DeAvila said he refused to be videotaped.  The court cannot compel DeAvila to speak.  Due process requires only that a party be allowed the opportunity to be heard--not that he actually *be* heard.  (See 3 Witkin, Cal. Evidence (5th ed. 2012) Presentation at Trial, § 3, p. 31, citing *Goldstein v. Goldstein* (1963) 220 Cal.App.2d 369 [no denial of due process to deny continuance where party becomes insane].)

Petitioners contend the trial court erred in relying on the risks to correctional officers, DeAvila, and other inmates, as set forth in Roy's declaration.  They contend such risks are speculative and an actual cell extraction may not be necessary once DeAvila is informed it will occur.  Petitioners rely on Garcia's declaration that in his experience 70 percent of inmates voluntarily comply when faced with the use of force.

First, we note Garcia's experience is only with juveniles.  Further, we find no error in deferring to prison officials on this matter.  As the United States Supreme Court has

9

stated: "Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. [Citations.] 'Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.' [Citation.] We further observe that, on occasion, prison administrators may be 'experts' only by Act of Congress or of a state legislature. But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial. [Citations.]" (*Bell v. Wolfish* (1979) 441 U.S. 520, 547-548 [60 L.Ed.2d 447].)

Petitioners contend the trial court neglected to address CDCR's self-interest in whether DeAvila attends the deposition. CDCR is a defendant in the civil action and it is refusing to procure a witness for the plaintiffs. We have recognized that CDCR does have an apparent conflict of interest. Petitioners, however, have failed to show that CDCR is in any manner preventing them from taking DeAvila's deposition. In fact, petitioners admit "[t]here is no evidence that CDCR has interfered with Mr. DeAvila's deposition."

The trial court did not abuse its discretion in declining to compel prison officials to forcibly remove DeAvila from his cell to attend the deposition. Considerations of the change in DeAvila's circumstances and housing, the potential risk to his safety and the safety of others, and the disruption to the prison environment all support the trial court's decision.

10

## DISPOSITION

The petition for writ of mandate is denied.  Real Parties in Interest are awarded costs.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)


                                                           /s/
                                                     Duarte, J.


We concur:


_____/s/_____
Nicholson, Acting P. J.


_____/s/_____
Butz, J.